FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 1 3 2007

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,           )
                                     )
        Petitioner,                  )
                                     )
v.                                   )        Civil Action No.
                                     )        1:07-CV-01065-RLV-LTW
MARTIN M. CHANDLER,                  )
                                     )
        Respondent.                  )

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

This action is before the Court on Petitioner United States of America's Petition to Enforce Internal Revenue Service Summons, ("Pet.") [Docket Entry 1], and Motion to Dismiss Respondent's Counterclaims filed in response to Order to Show Cause ("Pet'r Mot.") [Docket Entry 9]. For the reasons outlined below, this Court **RECOMMENDS** that the Government's Petition to Enforce Internal Revenue Service Summons, as well as its Motion to Dismiss Counterclaims filed in response to Order to Show Cause by *Pro Se* Respondent be **GRANTED**. Docket Entries [1, 9].

## BACKGROUND

On or about September 21, 2006, Internal Revenue Service ("IRS") Special Agent Melissa Milligan, who works out of the IRS' Criminal Investigation Division Phoenix Field Office located in Tempe, Arizona, issued an IRS summons to Respondent in

connection with her investigation of a third party taxpayer's tax liability. (Pet. ¶¶ 2, 4). The summons directed Respondent to appear before Special Agent Milligan in Tempe, Arizona on October 17, 2006, to provide testimony and produce for examination various books, papers, records, and other specifically described data the IRS alleges are relevant to the aforementioned investigation. (Pet. ¶ 6; id. Ex. A). Respondent failed to appear and present records as directed. (Pet. ¶ 9). Consequently, on December 22, 2006, the Government filed the instant petition to enforce the IRS summons, through which it seeks Respondent's full compliance with the summons. (Pet. ¶¶ 4-5). The Government also requests that it be awarded those costs associated with maintaining this enforcement action. (Pet. at 5). On January 12, 2007, *pro se* Respondent filed an Answer, listing paragraph-by-paragraph responses to the Government's Petition. Docket Entry [2].

On February 6, 2007, this Court ordered Respondent to appear for an April 12, 2007[1] hearing to show cause why he should not be compelled to comply with the IRS summons. Docket Entry [3]. Respondent thereafter filed a written response to this Court's order, requesting release of "all investigations into his personal tax returns for 1998 and forward" and "all liens on his property and name" and alleging damages in the

---

[1]The show cause hearing was later continued, at Respondent's request, to May 8, 2007. Docket Entry [8].

amount of twenty million dollars.  (Respondent's Response to Order to Show Cause ("Resp.") at 2-5, Docket Entry [5]).  Respondent did not address his failure to comply with the IRS summons in his written response.  (Resp. at 2-5).  On May 3, 2007, the Government moved to dismiss Respondent's counterclaims for injunctive and monetary relief.  Docket Entry [9].  Respondent did not file an opposition to the Government's motion.

On August 21, 2007, this Court ordered the parties to file findings of fact and conclusions of law in connection with the Government's Petition.  Docket Entry [10]. The parties submitted their proposed findings and conclusions on August 28, 2007 and October 3, 2007, respectively.[2]  Docket Entries [11-12].

## PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS

The Government contends that it has satisfied the prerequisites necessary for the Court's enforcement of the IRS summons.  (Petitioner's Proposed Final Report and Recommendation of United States Magistrate Judge ("Pet'r Proposed R&R") ¶ 11, Docket Entry [11]).  In support, the Government highlights that (1) its IRS summons

---

[2]Respondent's findings and conclusions were submitted well after the deadline provided in this Court's Order (Docket Entry [10]), and therefore are untimely. Notwithstanding this procedural defect, nothing in the substance of Respondent's findings and conclusions changes this Court's analysis.

3

AO 72A
(Rev.8/82)

was issued for a legitimate purpose, (2) the records sought under the summons are relevant to that legitimate purpose, (3) the records are not already in the IRS' possession, and (4) all administrative steps required under the Internal Revenue Code have been followed.  (Pet'r Proposed R&R ¶¶ 9-10; see also id. Ex. 1 (Milligan Affidavit)).  The Government further argues that Respondent's myriad challenges to the summon's enforcement are without merit, and as such, Respondent has failed to disprove its *prima facie* showing or to establish that the summons' enforcement would constitute an abuse of process.  (Pet'r Proposed R&R ¶¶ 13-17).

As suggested above, Respondent argues that enforcement of the IRS summons would constitute an abuse of process.  Specifically, Respondent claims that no regulation has been implemented to provide authority for enforcement of the summons. (Answer to Petition to Enforce Internal Revenue Service Summons and Order to Show Cause ("Answer") at 4, Docket Entry [2]).  Respondent also contends that pursuant to I.R.C. § 7604, an IRS summons may only be used for matters regulated by the Bureau of Alcohol, Tobacco, and Firearms ("ATF").  (Answer at 4).  Next, Respondent intimates that Special Agent Milligan lacks the authority to issue an IRS summons. (Answer at 5-6, 10; Respondent's Findings of Fact, Conclusion of Law, and Recommendation ("Resp't Proposed R&R") at 3, Docket Entry [12]).  Lastly,

4

Respondent alleges that he has been directed by the third party taxpayer who is the subject of the underlying investigation not to release information to the IRS or otherwise comply with the summons. (Answer at 6, 9-10; Resp't Proposed R&R at 4). For all these reasons, Respondent maintains that the IRS summons was "illegally and unlawfully issued" and should not be enforced. (Resp't Proposed R&R at 2).

Under the Internal Revenue Code, the Secretary of the Treasury ("Secretary") is authorized "[t]o examine any books, papers, records, or other data which may be relevant or material to" ascertaining the correctness of any return, and may issue summonses to those individuals in "possession, custody, or care" thereof to appear and produce same to the IRS. I.R.C. § 7602(a)(1)-(2); La Mura v. United States, 765 F.2d 974, 978-79 (11th Cir. 1985). The IRS' power to investigate under section 7602 repeatedly has been characterized as "broad" and "expansive." United States v. Arthur Young & Co., 465 U.S. 805, 816-17 (1984); United States v. Euge, 444 U.S. 707, 715 n.9 (1980); La Mura, 765 F.2d at 979 (noting that § 7601 "gives the Internal Revenue Service a broad mandate to investigate and audit 'persons who *may be* liable' for taxes") (emphasis in original). Nevertheless, this power to investigate is not without limit. For example, to secure a court's enforcement of an IRS summons, the government must demonstrate

> (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS' possession and, (4) that it has taken the administrative steps necessary to the issuance of a summons.

La Mura, 765 F.2d at 979 (citing United States v. Powell, 379 U.S. 48, 57-59 (1964)).

A summons for records or documents maintained by a third party is considered issued for a legitimate purpose so long as the IRS is investigating potential criminal violations of the tax code and has not already referred the matter to the Department of Justice for criminal prosecution. La Mura, 765 F.2d at 979-80; I.R.C. § 7602(b) ("The purposes for which the Secretary may take any action described in [§ 7602(a)] include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws."). With regard to relevance, the government's burden is "slight"; information is deemed relevant if it "might throw light upon the correctness of the taxpayer's return." La Mura, 765 F.2d at 981 (citation and internal quotations omitted). The government must also show that it has a "'realistic expectation rather than an idle hope that something might be discovered.'" Id. Ultimately, this four-factor test imposes a "minimal burden" upon the IRS, a burden that may be satisfied by merely presenting a sworn affidavit of the agent who issued the summons attesting to these facts. United States v. Medlin, 986 F.2d 463, 466 (11th Cir. 1993); United States v. Leventhal, 961

6

F.2d 936, 939 (11th Cir. 1992); <u>United States v. Rockwell Int'l</u>, 897 F.2d 1255, 1262 (3d Cir. 1990) (finding that the government satisfied its burden under <u>Powell</u> "by filing a petition to enforce the summons accompanied by the sworn affidavit of" an IRS special agent).

Once the government satisfies these requirements, the burden shifts to the party contesting the summons "to disprove one of the four elements of the government's *prima facie* showing or convince the court that enforcement of the summons would constitute an abuse" of process. <u>Leventhal</u>, 961 F.2d at 939-40; <u>La Mura</u>, 765 F.2d at 979-80. Unlike the government's burden, the contesting party's burden is "a heavy one," requiring the allegation of specific facts and the introduction of evidence. <u>Leventhal</u>, 961 F.2d at 940.

Having reviewed the record evidence and the parties' briefing, this Court finds that the Government has made the *prima facie* showing necessary for the Court's enforcement of the IRS summons. First, the Government has properly alleged that the IRS summons was issued for a legitimate purpose, namely, to further Special Agent Milligan's ongoing investigation of a third party's tax liability. (Pet. ¶¶ 4-5; <u>id.</u> Ex. A (Milligan Affidavit ¶¶ 2-3, 8)); <u>see also La Mura</u>, 765 F.2d at 979-80; I.R.C. § 7602(b). Second, those financial records sought, which pertain to the third party's tax liability for

7

the years ending 2001, 2002, 2003, and 2004, are undeniably relevant to and likely to shed light on the correctness of that third party taxpayer's returns for each of these years. La Mura, 765 F.2d at 981. In addition, as the third party taxpayer's accountant, it is reasonable to believe that those financial records sought under the summons would be maintained by or found in Respondent's possession, custody, or control. Id. Third, both the Government and Special Agent Milligan attest that the books, papers, records, and other data sought via the IRS summons are not already within that agency's possession. (Pet. ¶ 10; id. Ex. A (Milligan Affidavit ¶ 6)). Finally, the Government has demonstrated that all administrative steps required under the Internal Revenue Code have been followed because (1) I.R.C. § 7603(b)(2)(F) permits the issuance of IRS summonses to third party record keepers such as Respondent, an accountant, (2) the IRS summons was properly served to both Respondent and the third party taxpayer as required under I.R.C. §§ 7603(b)(1) and 7609, (3) Respondent maintains a business address located within the Court's jurisdictional boundaries, and (4) as dictated by I.R.C. § 7602(d), this matter has not already been referred to the Department of Justice for criminal prosecution. (Pet. ¶¶ 3, 7-8, 12; id. Ex. A (Milligan Affidavit ¶¶ 4, 9); see also La Mura, 765 F.2d at 979-80. Accordingly, the Government has carried its burden of proof with respect to the Court's enforcement of the IRS summons.

Moreover, this Court finds that each of Respondent's challenges to the enforcement of the summons lack merit. As an initial matter, Respondent is incorrect that an IRS summons cannot be enforced absent the promulgation of implementing regulations. (Answer at 4). The Internal Revenue Code requires the Secretary to prescribe "all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." I.R.C. § 7805(a). Regulatory embellishment is unnecessary because enforcement procedures are clearly identified by statute. I.R.C. § 7602, et seq. Because Congress has spoken clearly to this specific issue, there exists no requirement to promulgate or refer to regulations. RJR Nabisco, Inc. v. United States, 955 F.2d 1457, 1464 (11th Cir. 1992). Respondent is equally incorrect that an IRS summons may only be used in the enforcement of matters subject to regulation by the ATF. (Answer at 4). Regulations promulgated by the ATF are not the exclusive source of the government's authority to issue summonses under I.R.C. § 7602. Thomas v. United States, 254 F. Supp. 2d 174, 179 (D. Me. 2003) (citing United States v. Streett, 791 F. Supp. 563, 568 (D. Md. 1992) (noting that the "patent flaw" in this argument is that "ATF regulations are not the exclusive source of the government's authority to issue summonses under § 7602 of the Code")). Indeed, the IRS has both statutory and

regulatory authority to issue summonses and the statutory authority granted by § 7602 extends to "any person." I.R.C. §7602; see also United States v. Stoecklin, 848 F. Supp. 1521, 1525 (M.D. Fla. 1994) (citing I.R.C. § 7602, et seq., and emphasizing that "[r]egulatory embellishment is unnecessary[] because enforcement procedure is clearly set forth in the statutes"). Moreover, despite Respondent's claim to the contrary, IRS special agents such as Special Agent Milligan are authorized to issue IRS summonses. (Answer at 5-6, 10; Resp't Proposed R&R at 3). Specifically, the Secretary has delegated this power to the IRS, see La Mura, 765 F.2d at 978-79, which, in turn, has delegated this power to its agents. See 26 C.F.R. § 301.7701-9(c); 26 C.F.R. § 301.7701-9(b); IRS Delegation Order No. 4 (Rev. 22), 1997 WL 33479254 (Aug. 18, 1997) (Commissioner of IRS re-delegating authority to internal revenue agents); see also United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984) (observing that "[a]s a tool of discovery, the § 7602 summons is critical to the investigative and enforcement functions of the IRS"); United States v. Crum, 288 F.3d 332, 334 (7th Cir. 2002) (listing cases reiterating this general principle); Dean v. United States, 330 F. Supp. 2d 1318, 1323 (N.D. Fla. 2004) (noting that the federal regulations "trace the delegation of summons authority," which includes delegation to IRS employees). Finally, the third party taxpayer's mere instruction to Respondent not to comply with the summons does

10

not obviate Respondent's obligation to comply.  See La Mura, 765 F.2d at 977 n.2

(underlining that Congress expressly shifted "the burden of commencing litigation to

the taxpayer because the [former] automatic stay provision was so easy for the taxpayer

to invoke that taxpayers would stay the enforcement without first considering the merits

of their objection"); I.R.C. § 7609(b)[3] (describing the proper procedure by which a third

---

[3]Section § 7609(b) explains this process as follows:

**(1)  Intervention.** -- Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

**(2)  Proceeding to quash.** --

    **(A)  In general.** -- Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2).  In any such proceeding, the Secretary may seek to compel compliance with the summons.

    **(B)  Requirement of notice to person summoned and to the Secretary.** -- If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).

    **(C)  Intervention; etc.** -- Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A).  Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

11

party may intervene in an enforcement action or move to quash a summons). Here, the third party taxpayer has made no effort either to intervene in this proceeding or seek to quash the summons as required to deter Respondent's compliance. As such, Respondent's attempt to justify his non-compliance with reference to the third party taxpayer's instructions are unfounded. Thus, Respondent has neither rebutted the Government's *prima facie* showing nor established that enforcement would be an abuse of process. <u>Leventhal</u>, 961 F.2d at 939-40; <u>La Mura</u>, 765 F.2d at 979-80.

In sum, this Court finds that the Government has satisfied the *prima facie* showing described in <u>Powell</u>, and that Respondent failed both to disprove the Government's showing and to establish that the summons amounted to an abuse of process. Accordingly, this Court **RECOMMENDS** that the instant Petition to Enforce Internal Revenue Service Summons be **GRANTED**. Docket Entry [1].

## THE GOVERNMENT'S MOTION TO DISMISS COUNTERCLAIMS

The Government argues that Respondent's claims for injunctive relief and monetary damages, all of which relate to the IRS' review of Respondent's personal federal tax obligations, must be dismissed. (Pet'r Mot. at 3). Emphasizing the limited scope of summons enforcement actions, the Government initially contends that

─────────────────

I.R.C. § 7609(b).

Respondent's counterclaims are not permitted in proceedings of this type, and as such, should be dismissed. (Pet'r Mot. at 3-5). Additionally, the Government asserts that Respondent's counterclaims must be dismissed for lack of subject matter jurisdiction. (Pet'r Mot. at 5). In particular, the Government argues that any request by Respondent to cease the IRS' review of his personal tax liability is barred by the Anti-Injunction Act ("AIA"). (Pet'r Mot. at 6-8). The Government also argues that Respondent cannot maintain an action for monetary damages under either sections 7432 and 7433 of the Internal Revenue Code or the Federal Tort Claims Act ("FTCA"). (Pet'r Mot. at 8-14). As noted above, Respondent did not file an opposition to the Government's motion.

As a preliminary matter, this Court notes the Civil Local Rules provide that a party's failure to respond to any motion "shall indicate that there is no opposition to the motion." LR 7.1(B), NDGa.; see also Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1148 (N.D. Ga. 1997). Despite the mandate of this Local Rule, this Court is reluctant to recommend dismissal of Respondent's counterclaims on this basis in light of his *pro se* status. See Haines v. Kerner, 404 U.S. 519, 520 (1984); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (noting the liberal construction afforded to *pro se* litigants); see also Sampson v. Fulton County Jail, 157 F.App'x 242, 243-44 (11th Cir. 2005) (unpublished) (underlining that courts "do not always hold *pro se*

13

litigants to the same standards and attribute to them the same knowledge as that of a lawyer"). However, this Court also notes that courts are required to evaluate subject matter jurisdiction over a party's asserted claims. See Burr & Forman v. Blair, 470 F.3d 1019, 1035 n.38 (11th Cir. 2006) (explaining that "federal courts are duty bound to consider their subject matter jurisdiction *sua sponte*"); Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409-11 (11th Cir. 1999) (outlining a federal court's duty to consider, *sua sponte*, its own subject matter jurisdiction). Thus, notwithstanding Respondent's failure to oppose the Government's motion, this Court will *sua sponte* assess its subject matter jurisdiction over Respondent's counterclaims. For the reasons set forth below, this Court concludes that subject matter jurisdiction over Respondent's claims for injunctive and monetary relief is lacking.

### A.   IRS Summons Enforcement Actions are Summary in Nature

Again, the Government seeks Respondent's full compliance with its IRS summons through the instant enforcement proceeding. (Pet. at 4-5). Enforcement proceedings of this type "are designed to be summary in nature, and their 'sole purpose . . . is to ensure that the IRS has issued the summons for a proper purpose and in good faith.'" Rockwell Int'l, 897 F.2d at 1261 (citation omitted); United States v. Sheldon, No. 87-1622, 1988 WL 18166, at *1 (6th Cir. 1988) (unpublished) (IRS summons

14

enforcement proceedings are "limited to a determination regarding the propriety of the summons in question").  To that end, the proper focus of such proceedings is analysis of the four-step *prima facie* showing, outlined above, which the government is required to make in order to obtain judicial enforcement of the summons.  See La Mura, 765 F.2d at 978-79 (citing Powell, 379 U.S. at 57-59).  As explained above, the Government has made this *prima facie* showing.  Thus, Respondent's attempts to inject unrelated counterclaims regarding his personal tax liability are improper, and cannot be raised in response to the instant IRS enforcement proceeding, which was initiated only to obtain documents and records necessary to further the IRS' investigation of a third party taxpayer's tax liability.  Sheldon, 1988 WL 18166, at *1; United States v. Colonial Bank & Trust Co., Nos. B-79-218-221 & B-79-325, 1979 WL 1479, at *3 (D. Conn. 1979) (unpublished) (reasoning that "a proceeding to enforce a summons does not amount to a claim or cause of action by petitioners against respondents," and therefore, "the counterclaim must be dismissed").

**B.    The Court Lacks Subject Matter Jurisdiction Over Respondent's Counterclaims for Injunctive Relief and Monetary Damages**

**1.    Respondent's Counterclaims for Injunctive Relief are Barred by the AIA**

In his written response to this Court's February 7, 2007 Order to Show Cause,

Respondent asserts a counterclaim for injunctive relief as follows:

> [Respondent] is hereby requesting release of all investigations into his personal tax returns for 1998 and forward, and release of all liens on his property and name. The Internal Revenue Service has committed several fraudulent actions including 1) creating two SFRs (Substitute for Returns) for 2001 and 2002; 2) creating a Summons referencing liability to Trust penalties (IRC 6700) to third parties so that any person at Wachovia Bank reviewing the Summons would make the clear (and wrong) decision that [Respondent] was guilty of IRC 6700 which is an attack on him personally and professionally; 3) sending Notices of Liens to the Gwinnett County Recorders Office which filed a lien on his property (though it is truly just a "Notice", not a Lien).

(Resp. at 2). Stated differently, Respondent appears to seek (1) the cessation of any IRS investigation into his personal tax liability, and (2) release of any and all liens upon his property. (Resp. at 2).

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Dalm, 494 U.S. 596, 608 (1990) (citing United States v. Testan, 424 U.S. 392, 399 (1976)) (quotations omitted). Waiver of the federal government's sovereign immunity must be unequivocally expressed in statutory text to be effective, see, e.g., United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992), and will not be implied. Lane v. Pena, 518 U.S. 187, 192 (1996) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89,

95 (1990)).

The AIA prohibits suits brought by any person for the purpose of restraining the assessment or collection of any tax. I.R.C. § 7421(a).[4]  "Once a proper assessment has been made, the taxpayer's recourse is to pay the tax and bring a suit for refund." Hempel v. United States, 14 F.3d 572, 573 n.3 (11th Cir. 1994).  This provision is interpreted broadly and therefore applies to suits that do not directly concern the collection or assessment of a tax, but that might ultimately result in such assessment or collection.  See Hobson v. Fischbeck, 758 F.2d 579, 580-81 (11th Cir. 1985) (holding that a plaintiff's suit seeking to enjoin the IRS from investigating him for federal income tax evasion fell within the AIA).  A narrow judicial exception to the AIA exists: "federal courts may enjoin the collection of taxes if it can be shown that (1) under no circumstances could the government ultimately prevail on its tax claim and (2) equity jurisdiction otherwise exists; either ground being conclusive."  Mathes v. United States,

---

[4]Section 7421 provides, in relevant part:

[e]xcept as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(I), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

I.R.C. § 7421(a).

AO 72A
(Rev.8/82)

901 F.2d 1031, 1033 (11th Cir. 1990) (citations omitted).  Thus, as a general rule, federal courts will not entertain actions to enjoin the collection of taxes except in very rare and compelling circumstances.  Id.

Here, Respondent has failed both to identify any statute waiving the Government's sovereign immunity and to establish that any exception to the AIA is applicable.  In fact, to the extent that Respondent contests any personal tax assessed against him, equitable relief is unavailable because he possesses an adequate legal remedy, namely, he could pay the disputed tax and sue for a refund.  See Hobson, 758 F.2d at 581.  As such, this Court finds that subject matter jurisdiction over Respondent's counterclaims for injunctive relief is lacking.

### 2.   Respondent's Counterclaims for Monetary Damages Should be Dismissed for Lack of Subject Matter Jurisdiction

In addition to his counterclaim for injunctive relief, Respondent seeks monetary damages in the amount of twenty million dollars. (Resp. at 5).  Respondent does not, however, allege a specific jurisdictional basis for his damages claim.  (Resp. at 5). Based on its review of the relevant authorities, this Court determines that subject matter jurisdiction is lacking over Respondent's claim for monetary damages to the extent that such claims are based upon either Internal Revenue Code sections 7432 or 7433, or the

FTCA.

### a.   Jurisdictional Basis: the Internal Revenue Code

The Internal Revenue Code incorporates at least two limited waivers of sovereign immunity through which an individual taxpayer may initiate a civil action for damages against the United States government. Specifically, Internal Revenue Code section 7432 explains that

> [i]f any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

I.R.C. § 7432(a).  In contrast, Internal Revenue Code section 7433 provides that

> [i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

I.R.C. § 7433(a).  Exhaustion of administrative remedies is a prerequisite to the maintenance of a civil action under both section 7432 and 7433.  I.R.C. §§ 7432(d), 7433(d); Griswold v. United States, 59 F.3d 1571, 1582 (11th Cir. 1995) (noting that exhaustion of administrative remedies is a key element to a section 7432 action); Turner

AO 72A
(Rev.8/82)

v. United States, 429 F. Supp. 2d 149, 152 (D. D.C. 2006) (explaining that there are no exceptions to section 7433's exhaustion requirement).

In connection with his counterclaim for monetary damages, Respondent fails to allege that he has successfully exhausted administrative remedies of any kind prior to asserting his damages claim, and this Court cannot identify any evidence in the record suggesting such exhaustion. While this Court acknowledges that Respondent is a *pro se* litigant, it equally recognizes that Respondent's *pro se* status does not excuse his failure to comply with any and all statutory prerequisites to suit. See McNeil v. United States, 508 U.S. 106, 113 (1993) (noting that the Supreme Court never has "suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) (while courts are obligated "to give liberal construction to the pleadings of *pro se* litigants," such litigants are nevertheless required "to conform to procedural rules"); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989) ("once a pro se [] litigant is in court, he is subject to the relevant law and rules of court"). As such, this Court finds that to the extent that Respondent's damages counterclaim is predicated upon Internal Revenue Code sections 7432 or 7433, the Court cannot exercise jurisdiction over such claims due to Respondent's failure to

exhaust available administrative remedies.

### b.    Jurisdictional Basis: the FTCA

The FTCA likewise provides a limited waiver of the United States' sovereign immunity for tort claims. Dalrymple v. United States, 460 F.3d 1318, 1324 (11th Cir. 2006) (citing Suarez v. United Sates, 22 F.3d 1064, 1065 (11th Cir. 1994) (noting that the FTCA "allows the government to be sued by certain parties under certain circumstances")). Notwithstanding this limited waiver, "[a] federal court may not exercise jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency." Suarez, 22 F.3d at 1065 (citing 28 U.S.C. § 2675(a)). Such an administrative claim must be filed within two years from the time the claim accrues and must be "accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a); 28 U.S.C. §§ 2675, 2401(b).

Respondent fails to allege that he filed any administrative tort claim with any governmental agency. For its part, the Government offers the declaration of IRS FTCA Claims Manager Mary Ellen Krcha to support its contention that no such administrative tort claim was ever filed. (Pet'r Mot. at 11-12; id. Ex. 3 (Krcha Declaration)). In particular, Ms. Krcha represents that her examination of FTCA claims records dated October 1, 1995, to the present, revealed that "no claims were filed by or on behalf of

21

[Respondent]." (Pet'r Mot. Ex. 3 (Krcha Declaration ¶ 3). Respondent does not attempt to contest this representation, and this Court detects nothing in the record to undermine its authenticity. Thus, to the extent that Respondent's damages claim is based on the FTCA, this Court finds that Respondent's failure to file an administrative tort claim with respect to the IRS' actions necessitates dismissal of that damages claim for lack of subject matter jurisdiction.

Even assuming Respondent had filed an administrative tort claim, the Court nevertheless lacks subject matter jurisdiction over Respondent's FTCA damages claim. As alleged, Respondent's damages claim arises from the IRS' supposedly improper conduct in connection with its assessment and/or collection of federal taxes Respondent owed. (Resp. at 2). The FTCA expressly provides that the United States has not waived sovereign immunity for damages arising from any claim "arising in respect of the assessment or collection of any tax." 28 U.S.C. § 2680(c); see also Jeanmarie v. United States, 242 F.3d 600, 604 (5th Cir. 2001) (explaining that "Congress intended to insulate IRS and Customs agents from tort liability stemming from any of their revenue-raising activities"); Capozzoli v. Tracey, 663 F.2d 654, 658 (5th Cir. 1981) (highlighting that 28 U.S.C. § 2680(c) has been broadly interpreted "to preclude suits for damages arising out of the allegedly tortious activities of IRS agents when those activities were in any

22

way related to the agents' official duties").  As such, Respondent cannot maintain a FTCA claim for damages arising from tax assessment or collection activities.

Moreover, to the extent that Respondent's FTCA damages claim is predicated on any alleged fraudulent conduct by the IRS, such a claim is similarly barred.  Section 2680(h) makes clear that an individual may not successfully maintain a FTCA claim arising out of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); see also Boda v. United States, 698 F.2d 1174, 1176 (11th Cir. 1983) (holding that § 2680(h) is a jurisdictional bar to a plaintiff's FTCA claim that she was defrauded).  The Court therefore lacks jurisdiction over Respondent's damages claims to the extent that they are based on fraudulent conduct by the IRS, and such claims must be dismissed without prejudice on this basis.  Boda, 698 F.2d at 1177 n.4 (instructing that "[w]here dismissal can be based on lack of subject matter jurisdiction . . . the court should dismiss on only the jurisdictional grounds," and that "dismissal is without prejudice").

In conclusion, this Court finds that Respondent's counterclaim for monetary damages, regardless of whether that counterclaim is based on Internal Revenue Code sections 7432 or 7433 or the FTCA, should be dismissed for lack of subject matter

jurisdiction. Accordingly, this Court **RECOMMENDS** that the Government's Motion to Dismiss Counterclaims be **GRANTED**. Docket Entry [9].

## CONCLUSION

Based on the foregoing, this Court **RECOMMENDS** that the Government's Petition to Enforce Internal Revenue Service Summons, and its Motion to Dismiss Counterclaims filed in response to Order to Show Cause by *Pro Se* Respondent be **GRANTED**. Docket Entries [1, 9]. This Court also **RECOMMENDS** that Respondent be ordered to pay the Government's costs incurred in enforcing this summons, including reasonable attorney's fees, as may be proven by motion and affidavit to be filed in this action.

As this is a Final Report and Recommendation and there are no other matters pending before the undersigned, the Clerk is directed to terminate the reference to the undersigned.

**SO REPORTED AND RECOMMENDED** this _13_ day of NOVEMBER, 2007.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

24